UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BAHSID MCLEAN,

                                                Plaintiff,

   v.                                                                                    9:21-CV-1144
                                                                                                    (TJM/ATB)

C.O. A. COTTRELL, et al.,

                                                Defendants.

---

BAHSID MCLEAN, Plaintiff, pro se
BRENDA T. BADDAM, Assistant Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

    Plaintiff brought this civil rights action asserting Eighth Amendment violations that occurred while he was incarcerated at Auburn Correctional Facility ("Auburn C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The summary judgment motion filed by the remaining defendants in this action has been referred to me for Report and Recommendation by Senior District Judge Thomas J. McAvoy, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

    Plaintiff filed his original complaint on October 20, 2021. (Dkt. No. 1). By decision and order dated December 9, 2021, Judge McAvoy accepted the complaint for filing only to the extent that it asserted Eighth Amendment excessive force and/or failure to intervene claims against defendants Cottrell, Steinberg, Hess, Grzeskowiak, Strong, Turo, Purcell, Steele, and Thomas in their individual capacities. (Dkt. No. 7). Defendants answered the complaint on April 26, 2022. (Dkt. No. 27)

Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56, seeking dismissal of the action. (Dkt. No. 34). Plaintiff responded in opposition to the motion on January 23, 2023. (Dkt. No. 43). For the reasons set forth below, the court recommends denying defendants' motion for summary judgment.

**I.     Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule 56.1(a).[1] The same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise. Local Rule 56.1(b). The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

Credibility assessments and the choice between conflicting versions of a story are generally for a jury to resolve. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). However, the Second Circuit recognized an exception to this rule in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). In *Jeffreys*, the court held that summary judgment may be granted in the rare case, "where there is nothing in the record to support the plaintiff's allegations, aside from his own contradictory and incomplete

---

[1] Previously Local Rule 7.1(a)(3).

testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that 'no reasonable person' could credit . . . his testimony." *Quick v. Quinn*, No. 9:12-CV-1529 (DNH/DEP), 2014 WL 4627106, at *4 (N.D.N.Y. Sept. 11, 2014) (quoting *Jeffreys*, 426 F.3d at 54-55).

## II.   Factual Contentions

### A.   Plaintiff's Contentions

On August 12, 2021, Auburn C.F. was on a lockdown because an officer, not involved with this case, was allegedly cut by an inmate affiliated with the Bloods gang. (Dkt. No. 34-3, McLean Dep. at 33). During the lockdown, officers arrived at D-block and began "beating" up individuals who were affiliated with the Bloods gang. (McLean Dep. at 36). Plaintiff "knew" that the officers were not merely conducting cell searches, because the officers started in the middle of the gallery instead of the front or back, and were only entering the cells of Bloods gang members. (*Id.*). Plaintiff heard the officers enter approximately ten to eleven cells before approaching his cell. (*Id.* at 40). Although plaintiff could not see the officers, he heard screaming and yelling. (*Id.*). He alleges that he overheard another inmate having a seizure, one being kicked so hard in the stomach that he defecated on himself, and others being removed on stretchers. (McLean Dep. at 40, 50).

Plaintiff testified that the officers then lined up in front of the cells in his gallery, and Correctional Officer ("C.O.") Grzeskowiak cracked his knuckles in front of plaintiff's cell. (*Id.* at 41). While outside of the cell, the officers gave plaintiff multiple, direct orders to show his hands, which plaintiff admits that he disobeyed because he was

holding a broken broomstick. (McLean Dep. at 43-44). When the cell door was opened, plaintiff attempted to push C.O. Grzeskowiak out of the cell with one arm while holding the broomstick in his other hand. (*Id.* at 46). Plaintiff hit C.O. Grzeskowiak with the broomstick, but is not sure who actually got stabbed during the entire altercation. (*Id.* at 56).

After plaintiff pushed C.O. Grzeskowiak out of the cell, other officers entered the cell and restrained plaintiff in handcuffs, leg shackles, and a spit mask. (*Id.* at 58, 61, 66). The officers then used the back of the spit mask as a grip and slammed plaintiff's head on the cell walls and bars. (*Id.* at 61). Simultaneously, other officers were kicking and punching plaintiff all over his body. (McLean Dep. at 62). Plaintiff was unable to identify the officers because of the spit mask, coupled with blood getting into his eyes. (*Id.* at 63-64). At some point during the incident, one of the officers tried to put plaintiff's head in the toilet, but another officer told him not to. (McLean Dep. at 73). Plaintiff asserts that he did not attempt to resist after he was handcuffed and shackled. (*Id.* at 74). Plaintiff also testified that he never spoke to any officers after the incident started. (*Id.* at 75). An alleged cell frisk was then completed of plaintiff's cell by C.O. Cottrell, C.O. Grzeskowiak, C.O. Strong and C.O. Turo, and observed by Sergeant ("Sgt.") Steinberg and Sgt. Hess. (Defs.' Mem. at 2-3).

After the incident in plaintiff's cell, at or around 2:50 p.m., plaintiff was escorted from D-Block to C-Block. (*Id.* at 5). Plaintiff was transported with the handcuffs, leg shackles, and the spit mask secured on him. (McLean Dep. at 83). Sgt. Purcell observed the escort conducted by C.O. Steele and C.O. Thomas. (Defs.' Mem. at 5).

Plaintiff testified that the officers told him the reason they were attacking him was because "they weren't getting the response that they wanted out of me . . . they wanted to hear me scream[, and] they wanted to hear me plea for them to stop[.]" (McLean Dep. at 85). During the escort, plaintiff testified that the officer to his right stumbled, said "aww fuck this" and pushed plaintiff down a flight of stairs. (*Id.* at 87). When he reached the bottom, the officers picked him up and took him to a second flight of stairs, where they all pushed plaintiff down together. (*Id.* at 88-89). When plaintiff reached the bottom of the second flight of stairs, the officers picked him up and walked him up a flight of stairs to C-Block. (*Id.* at 92).

At C-Block, one of the officers threw plaintiff to the ground and kicked him in the head. (*Id.*). The officers then removed his leg shackles. (*Id.*). One officer told another officer to hold plaintiff's legs open and then the officer "started kicking [plaintiff] in the nuts." (*Id.*). After they finished kicking plaintiff, they informed the infirmary that they were bringing him down. (*Id.* at 95). On the way to the infirmary, C.O. Grzeskowiak came over, lifted plaintiff's spit mask up and flipped a gravity knife open, while stating "I will stab your stupid ass fucking faggot." (McLean Dep. at 98). One of the sergeants told him "no, we're not doing that, we're not doing it, just whup his ass instead[,]" so C.O. Grzeskowiak put the knife away and left. (*Id.*). When they arrived at the infirmary, the officers removed plaintiff's spit mask. Sgt. Purcell told the other officers "remember there's cameras in here, we're done." (*Id.*). Plaintiff was transferred from the medical center to the Auburn community hospital because the medical staff could not treat his injuries. (*Id.* at 108).

6

### B.    Defendants' Contentions

On August 12, 2021, C.O. Grzeskowiak attempted to conduct a cell frisk of the plaintiff's cell. (Dkt. No. 34-2, Defendants' Statement of Material Facts ("Defs.' S.O.M.F." ¶ 12)). Plaintiff disobeyed several direct orders to show his hands to the officers. (*Id.* ¶¶ 17, 19). When the cell doors opened, plaintiff lunged at the cell gates wielding two sharpened broomstick pieces. (*Id.* ¶ 20). C.O. Grzeskowiak was struck on his right wrist and his posterior neck. (*Id.* ¶ 22). C.O. Cottrell was stabbed in the backside of his right hand causing two puncture wounds to his middle and pointer fingers. (*Id.* ¶ 23). Plaintiff was given multiple direct orders to drop the weapons, but refused. (*Id.* ¶ 24). After plaintiff refused to drop his weapons, C.O. Grzeskowiak used the tip of his state issued baton to force plaintiff to drop his weapons and back away from the cell gate. (*Id.* ¶ 26). Additional staff arrived and took over for C.O. Grzeskowiak. (*Id.* ¶ 27). C.O. Strong used body holds to control plaintiff's left arm and wrist through the cell bars, while Sgt. Steinberg used his baton to strike plaintiff's right wrist and hand area. (*Id.* ¶¶ 28-29). The baton strikes caused plaintiff to drop both weapons. (*Id.* ¶ 30).

Sgt. Steinberg maintained control of plaintiff's right wrist, while C.O. Strong maintained control of plaintiff's left arm. (Defs.' S.O.M.F. ¶¶ 31-32). Sgt. Hess and C.O. Cottrell then entered the cell and attempted to use body holds to control plaintiff. (*Id.* ¶ 33). Plaintiff used his feet to push against the cell bars and broke free from the body holds, causing the officers to lose control of his arms. (*Id.* ¶ 34). After he freed his arms, plaintiff began swinging punches directed towards Sgt. Hess and also tried to

7

spit on him. (Defs.' S.O.M.F. ¶¶ 35, 37). C.O. Cottrell then used upper body holds to force plaintiff onto the desk inside his cell. (*Id.* ¶ 36). Plaintiff kicked away from the desk and violently thrashed around. (*Id.* ¶ 38). C.O. Turo then arrived on scene and assisted by using body holds on plaintiff to force him to the floor. (*Id.* ¶ 39). Plaintiff attempted to break free from the holds and spit toward the officers. (*Id.* ¶ 40). Sgt. Hess and C.O. Turo forced plaintiff's arms behind his back and applied mechanical restraints. (*Id.* ¶ 41). C.O. Turo then put a spit mask on plaintiff, after being authorized by Lt. Hartman, and C.O. Strong recovered the weapons. (*Id.* ¶ 42).

After the first incident concluded, Sgt. Purcell ordered C.O. Steele and C.O. Thomas to escort plaintiff from his cell to C-Block. (Defs.' S.O.M.F. ¶ 48). Defendants allege that plaintiff made several threats towards the officers, including a threat to kill C.O. Steele and his family. (*Id.* ¶¶ 50-51). During their escort, plaintiff mule kicked C.O. Steele in his groin while they were on the stairs of C-Block. (*Id.* ¶ 52). C.O. Steele and C.O. Thomas then forced plaintiff face first down the stairs and stood him up at the landing. (*Id.* ¶ 53). Plaintiff continued to headbutt, kick, and make threats towards the officers. (*Id.* ¶ 55).

At C-Block, plaintiff mule kicked C.O. Thomas in the upper right leg. (Defs.' S.O.M.F. ¶ 57). C.O. Steele and C.O. Thomas then forced plaintiff face first to the ground. (*Id.* ¶ 58). Plaintiff continued to threaten and headbutt the officers during the remainder of the escort. (*Id.* ¶ 63). After plaintiff was stood up, he attempted to kick C.O. Thomas. (*Id.* ¶ 60). The officers then repeatedly forced plaintiff to the ground and stood him back up. (*Id.* ¶¶ 58-62). When plaintiff was attempting to headbutt the

officers, he inadvertently banged his head off the wall, ramp, and stair railings. (*Id.* ¶ 64). Plaintiff then stopped resisting and the officers did not use additional force for the remainder of the escort. (*Id.* ¶ 65).

## DISCUSSION

### II. Excessive Force

#### A. Legal Standard

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). To sustain a claim of excessive force, a plaintiff must establish both the objective and subjective elements of an Eighth Amendment claim. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999); *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

In order to satisfy the objective element of the constitutional standard for excessive force, a defendant's conduct must be "inconsistent with the contemporary standards of decency." *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. The malicious use of force to cause harm constitutes a *per se* Eighth Amendment violation, regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's

9

chambers, violates a prisoner's constitutional rights." *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (citation omitted). With respect to this element, the law is clear that "a claim of excessive force may be established even if the victim does not suffer 'serious' . . . or 'significant' injury, . . . provided that the amount of force used is more than '*de minimis*,' or involves force that is 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 7-10.

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id.* at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:

> the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### B.    Analysis

As alluded to in the factual contentions section, there are many material questions of fact in dispute in this case. Defendants argue that plaintiff cannot satisfy the subjective prong of an excessive force analysis, while plaintiff maintains he was verbally threatened, subjected to racial slurs, and brutally assaulted by the defendants, even after he was fully restrained. (Dkt. No. 34-1 at 9-17; Dkt. No. 36 at 1-3).

In order for the court to apply the *Jeffreys* exception, the defendants must satisfy

each of the following: (1) "the plaintiff must rely almost exclusively on his own testimony, (2) the plaintiff's testimony must be contradictory or incomplete, and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense." *Quick v. Quinn*, 2014 WL 4627106, at *4 (internal quotation marks omitted) (quoting *Benitez v. Ham*, No. 04-CV-1159 (NAM/GHL), 2009 WL 3486379, at *20-21 (N.D.N.Y. Oct. 21, 2009). However, the court does not find *Jeffreys* exception applies to the case at hand for several reasons.

First, the record before the court contains no contradictory accounts from plaintiff. Plaintiff has consistently alleged the same account of assault in his Tier III hearing, complaint, deposition, and in his statement of material facts pursuant to local rule 56.1(a). *See Rossi v. Stevens*, No. 04 Civ. 01836, 2008 WL 4452383, at *5 (S.D.N.Y. Sept. 30, 2008) ("Though [p]laintiff's evidence is minimal-it consists primarily of his own testimony-it is nevertheless sufficient to indicate the existence of a disputed material fact as to whether the force allegedly applied to him was wanton and unnecessary."); *see also Scott v. Coughlin*, 344 F.3d 232, 291 (2d Cir.2003) ("Although [plaintiff's] evidence may be thin, his own sworn statement is adequate to counter summary judgment in this case and must be weighed by a trier of fact.").

Additionally, the court does not find plaintiff's account incomplete on the basis that he could not identify the officers without using the names on the use of force forms. Here, plaintiff testified and defendants' admitted to placing a spit mask on plaintiff, which would obstruct his vision and ability to identify the guards. Although plaintiff relies on his own testimony to counter defendants' version of events, "in order for the

*Jeffreys* exception to apply, plaintiff's testimony must be 'contradictory or incomplete'", which defendants have failed to establish. *Torres v. Caron*, 2009 WL 5216956, *8 (N.D.N.Y. 2009); *Payne v. Coburn*, No. 9:15-CV-392 (GLS/TWD), 2017 WL 4330372, at *9 (N.D.N.Y. Aug. 29, 2017), *report and recommendation adopted*, 2017 WL 4326079 (N.D.N.Y. Sept. 27, 2017). Plaintiff has also offered evidence to support his claims by providing medical records of the injuries he sustained from his alleged assault, which required hospitalization. (Dkt. No. 36-1). Unlike in *Jeffreys*, the medical records here are not wholly inconsistent with plaintiff's claim. (*Id.*).

Whether defendants used reasonable force in subduing an inmate who was physically resisting, and the extent of plaintiff's injuries all require credibility determinations that must be resolved by the jury. *See Dallio v. Santamore*, No. 9:06-CV-1154 (GTS/DRH), 2010 WL 125774, at *9 (N.D.N.Y. Jan. 7, 2010) (holding that because the court should not weigh the evidence or make credibility determinations, summary judgment would be denied where the plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by the defendants, notwithstanding the relatively minor injuries that the plaintiff suffered and the substantial contrary evidence proffered by the defendants); *Cicio v. Lamora*, No. 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, *7-8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on the plaintiff's claim that the defendant hit him several times after he was subdued and helpless, despite "seemingly overwhelming" contradictory evidence, including the fact that the plaintiff suffered only a minor bruise), *report and recommendation adopted*, 2010 WL 1063864 (N.D.N.Y. Mar. 22, 2010).

Defendants rely on *Sanders v. Torres*, to support their contention that plaintiff cannot establish the subjective prong of the excessive force analysis. (Defs.' Mem. at 13). In *Sanders*, the defendants provided video footage of the entire incident, allowing the court "[t]o resolve the disparity between plaintiff's and defendants' accounts[.]" *Sanders v. Torres*, No. 9:19-CV-697 (GTS/CFH), 2021 WL 799263, at *14 (N.D.N.Y. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 797014 (N.D.N.Y. Mar. 2, 2021). The court specifically relied on the video footage, along with the defendant's documentary evidence, to determine the officers were acting in good-faith. *Id.* at 16. Here, no video or audio footage has been provided by either party.[2]

Furthermore, the plaintiff in *Sanders* only alleged "at most, a *de minimis* injury," while the plaintiff in our case has alleged injuries that undisputably required hospitalization. *Id.* at *15. Additionally, plaintiff's allegations in this case are less speculative. In *Sanders*, the plaintiff alleged "a group of officers . . . assumed that he was gang member." *Id.* at *16. Here, plaintiff alleges that he was initially attacked because another member of the Bloods gang, who was housed in another block of the prison, slashed an officer. (McLean Dep. at 33). He specifically asserts that the officers had a list of inmates affiliated with the gang and were selectively entering their cells under the pretext of a cell frisk. (*Id.* at 36). He testified the cell frisk was not ordinary because it started in the middle of the gallery instead of at the front or back. (*Id.*).

---

[2] The court notes that plaintiff alleges Auburn C.F. was outfitted with audio recording and has requested the footage at both his Tier III hearing and his deposition. (McLean Dep. at 56-57; Dkt. No. 34-3 at 53). At his deposition, defense counsel advised plaintiff that she did not have any audio or video footage, but that she would disclose it to him if she received any footage. (McLean Dep. 57-58).

Plaintiff further testified he was told by the officers that he was attacked during the escort because they did not get the reaction they wanted out of him initially. (*Id.* at 85). These statements represent "'specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion' and the credibility of such statement is better left to a trier of fact." *Tubbs v. Venettozzi*, No. 9:19-CV-0126 (LEK/DJS), 2022 WL 7274397, at *2 (N.D.N.Y. July 20, 2022), *report and recommendation adopted*, 2022 WL 4545542 (N.D.N.Y. Sept. 29, 2022).

Defendants also argue that the lack of a pre-existing relationship or "unpleasant interactions" between the plaintiff and the defendants preclude a finding of a wanton state of mind. (Defs.' Mem. at 16-17). However, the cases relied on by defendants are inapposite to the underlying facts. For example in *James v. Phillips*, defendant's actions consisted of merely pushing or shoving an inmate as opposed to the alleged assault suffered by the plaintiff in our case. No. 05 Civ. 1539, 2008 WL 1700125, at *4 (S.D.N.Y. Apr. 9, 2008). Moreover in *Cox v. Fischer*, the court relied on the extent of plaintiff's minimal injuries consisting of superficial cuts, in concluding that the defendants did not act with malice. 248 F. Supp. 3d 471, 486 (S.D.N.Y. 2017).

Defendants also argue that plaintiff does not allege that any of the defendants knew of his status with the gangs. However, plaintiff testified that defendants had a list of all the Bloods gang members and specifically targeted them based on their gang affiliation in response to actions committed by another gang member. (McLean Dep. at 36, 147, 168; Defs.' Mem. at 17). If true, a jury could reasonably infer that the

defendants acted maliciously both in the cell and during the escort. *Allen v. City of New York*, 480 F. Supp. 2d 689, 707 (S.D.N.Y. 2007) ("On the issue of [defendant's] subjective intent, [plaintiff] contends that . . . [the defendant] assaulted him for no legitimate reason, given that, once [plaintiff] was under the officers' control, he posed no threat and no further force was needed—certainly not the repeated banging of [plaintiff's] head against the wall. If [plaintiff's] account of events is believed, then a jury could reasonably infer that [the defendant] acted maliciously, regardless of whether plaintiff had initially failed to comply with a direct order."). Viewing the evidence in the light most favorable to the plaintiff, a reasonable fact-finder could believe these actions show a wanton state of mind.

Therefore, this court recommends defendants' motion for summary judgment be denied because there remain genuine issues of material facts as to plaintiff's excessive force claims. *See Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) ("Although appellant's excessive force claim is weak and his evidence extremely thin, dismissal of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him.").

**II.   Qualified Immunity**

**A.   Legal Standards**

Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be

15

sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). A defendant will thus not be liable for damages "if he did not violate clearly established law or if it was objectively reasonable for him to believe that he was not violating clearly established law." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (citing *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) and *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001)). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir. 1999); *see also Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir. 1999) ("'[T]he inquiry is not whether plaintiff has alleged a violation of an abstract legal standard, but whether under the particular circumstances alleged, defendants could have reasonably believed that they did not violate plaintiff's constitutional rights.'") (quoting *Gittens v. Lefevre*, 891 F.2d 38, 42 (2d Cir. 1989)).

**B.     Analysis**

Dismissal on the basis of a qualified immunity defense is not appropriate where "there are facts in dispute that are material . . . . " *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *see, e.g.*, *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (issues of material fact which existed as to the excessive force claim precluded summary judgment based on a qualified immunity defense); *Amaker v. Haponik*, No. 98 Civ. 2663, 2000 WL 343772, at *6 (S.D.N.Y. Mar. 31, 2000) (complaint should not be dismissed on

qualified immunity grounds where "the facts [were] not sufficiently developed at this stage in the proceedings to conclude that a reasonable officer would not have concluded that defendants actions were unlawful"). Officers assaulting an inmate who was restrained and compliant could constitute a *per se* constitutional violation under the Eighth Amendment. *See Dallio v. Santamore*, 2010 WL 125774, at \*9. Thus, the disputed material issues of fact in this case, including the extent to which plaintiff resisted and the nature and extent of force that was used by defendants, particularly after plaintiff was under control, preclude resolution of the issue of qualified immunity on summary judgment. *See, e.g.*, *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005) ("[T]he same genuine issues of material fact that preclude summary judgment on plaintiff's excessive force claim,"–i.e., a dispute regarding whether correction officers continued to hit a prisoner, who was accused of earlier assaulting one of the officers, even after the prisoner was cuffed and shackled–"also preclude application of the defense of qualified immunity at the summary judgment stage"); *Allen v. City of New York*, 480 F. Supp. 2d 689, 706-07, 710-11 (S.D.N.Y. 2007) ("For the same reasons that [correction officer] is not entitled to summary judgment on the merits of an excessive force claim"–i.e., because it was disputed whether the officer assaulted a resisting inmate for no legitimate reason once the inmate was under the officers' control– "he is not entitled to the summary disposition of such a claim on the basis of qualified immunity").

    **WHEREFORE**, based on the findings above, it is

    **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No.

34) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  April 17, 2023

Andrew T. Baxter
U.S. Magistrate Judge